IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RICHARD D. MADDOX, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 09-0276-REB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Now pending before the Court is Petitioner Richard D. Maddox's Petition for Review
(Docket No. 1), seeking review of the Social Security Administration's decision to deny his
claim for disability insurance benefits. This action is brought pursuant to 42 U.S.C. § 405(g).
Having carefully reviewed the record and otherwise being fully advised, the Court enters the
following Memorandum Decision and Order:

## I. FACTUAL BACKGROUND & ADMINISTRATIVE PROCEEDINGS

Petitioner Richard D. Maddox ("Petitioner" or "claimant") was employed in roughly the
same line of work for over 26 years. AR 34. His last job was in a water treatment plant
monitoring samples, removing phosphorous from the sumps, and operating monitoring
equipment. AR 33. He was 57 years old at the time of the hearing before the Administrative
Law Judge ("ALJ"). AR 27.

**MEMORANDUM DECISION AND ORDER - 1**

On March 1, 2006, Petitioner applied for supplemental security income, alleging disability beginning December 23, 2005. AR 11, 113. He specifically alleged that rheumatoid arthritis throughout the body, spine deformation, hearing loss, depression, carpal tunnel in both wrists, and a torn rotator cuff of left shoulder limit his ability to work. AR 142.

Petitioner's claim was initially denied on May 19, 2006, and again upon reconsideration on July 28, 2006. AR 11. Petitioner then filed a written request for hearing before an ALJ. AR 14. ALJ Donald R. Jensen presided over a hearing on February 15, 2008 in Pocatello, Idaho. AR 11. Petitioner appeared and testified at the hearing, as did Connie Hill, a vocational expert. Petitioner was represented at the hearing by attorney Merrick Jackson.

On July 23, 2008, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 8. The ALJ found Petitioner's hearing loss and the degenerative, disease of the spine, hip, and fingers to be severe, AR 13, but Petitioner's depression, anxiety and Post Traumatic Stress Disorder ("PTSD") were found to only be mild, AR 14.

Petitioner timely requested review by the Appeals Council on September 10, 2008. AR 5. The Appeals Council denied Petitioner's request on April 15, 2009, making the ALJ's decision the final decision of the Commissioner of Social Security. Having exhausted his administrative remedies, Petitioner timely filed the instant action, challenging the ALJ's evaluation of the evidence. Petitioner argues that his impairments meet or medically equal impairments listed at 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.02, 1.04, and 2.08; that the combined effects of his impairments render him disabled; that the ALJ's determinations that depression and anxiety are not severe impairments are not supported by substantial evidence, and that the ALJ erred in

finding he is able to perform past relevant work.  In the discussion sections of his brief,

Petitioner appears to challenge the ALJ's determination of his credibility, but he does not list it

as an issue on appeal.  As many of the issues Petitioner raises relate to the ALJ's credibility

assessment, the Court will discuss that finding first in its analysis.

## II.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to

disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the

evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20

C.F.R. §§ 404.1520, 416.920.  Notably, the second part of that process involves a determination

of whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe"

impairment is found, the claimant will be found not to be disabled for the purpose of conferring

benefits.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  The

ALJ's findings as to any question of fact, if supported by substantial evidence, are conclusive.

42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there

is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when

there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374

(9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.      Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaging in SGA, the analysis proceeds to the second step.  Here, the ALJ concluded that Petitioner has not engaged in SGA during any relevant time.  AR 13.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.
If the claimant does not have a severe medically determinable impairment or combination of
impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the
ALJ found that Petitioner had the following severe impairments: degenerative disc disease of the
lumbar spine, hearing loss, and osteoarthrosis. AR 13.

The third step requires the ALJ to determine the medical severity of any impairments; that
is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part
404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer
is yes, the claimant is considered disabled under the Social Security Act and benefits are
awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor
equal one of the listed impairments, the claimant's case cannot be resolved at step three and the
evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed
impairments do not meet or medically equal, either singly or in combination, the criteria
established for any of the listed impairments. AR 14.

The fourth step of the evaluation process requires the ALJ to determine whether the
claimant's residual functional capacity is sufficient for the claimant to perform past relevant
work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional
capacity is his ability to do physical and mental work activities on a sustained basis despite
limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Further, an individual's past
relevant work is work performed within the last 15 years or 15 years prior to the date that
disability must be established; also, the work must have lasted long enough for the claimant to
learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b),

**MEMORANDUM DECISION AND ORDER - 6**

404.1565, 416.960(b), 416.965.  Here, the ALJ found Petitioner has the residual functional

capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he needs the

option to alternate sitting and standing periodically, is limited to frequent fingering bilaterally,

should avoid concentrated exposure to noise, would have difficulty communicating in noisy

environments, and would require occasional requests to speak louder or repeat what was said in

quiet environments.  The ALJ determined that Petitioner is able to perform his past relevant

work.  AR 17.

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  Because the ALJ found Petitioner able to perform his past relevant work, he did not

go on to consider whether the claimant has the ability to perform alternate work.

At the end of the sequential process, the ALJ determined that Petitioner has not been

under a disability, as defined in the Social Security Act, since December 23, 2005 through the

date of the ALJ's decision.

**B.** **Analysis**

1. <u>Petitioner's Credibility</u>

As explained above, Petitioner does not raise this challenge as a separate issue, but it is implicit in his briefing that he disagrees with the ALJ's credibility assessment. Specifically, Petitioner cites to several of his own statements as reasons the ALJ's various findings are not supported by substantial evidence, and argues that the ALJ had no founded reason to doubt Petitioner's credibility. Pet.'s Br., p. 18. "Credibility decisions are the province of the ALJ," *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), and if the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. Thus, the fact that Petitioner's statements support his interpretation of the evidence does not mean the ALJ did not have sufficient reasons for finding otherwise. When the ALJ to rejects a claimant's complaints, he "must provide specific, cogent reasons for the disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1996) (internal quotation marks and citation omitted). As explained in more detail below, the ALJ did that here where he rejected Petitioner's testimony.

When considering Petitioner's credibility, the ALJ found that "[Petitioner's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." AR 16. He further found Petitioner's testimony to be generally credible, but not totally reliable. *Id.*

**MEMORANDUM DECISION AND ORDER - 8**

In assessing the credibility of Petitioner's statements, the ALJ properly considered Petitioner's statement that he stopped working because the plant where he was working shut down. *See* AR 15, 32-33, 142, 246; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (testimony that a claimant "left his job because he was laid off, rather than because he was injured" was properly considered as part of the ALJ's credibility finding). Although Petitioner argues that he tried to explain at the hearing that, even though the plant was shut down, the real reason he quit working was his medical conditions, *see* Pet.'s Br., p. 8; AR 32, this testimony was not in the record before the ALJ. Petitioner's attorney at the hearing had the opportunity to ask questions and could have elicited this response. Regardless, there are inconsistent statements in the record in this regard and the ALJ may choose which statements to credit for credibility determination purposes. *See, e.g.*, AR 142 (Petitioner reported on his disability report that he stopped working because his "contract ended"); AR 246 (Disability Determinations examiner Kevin Hill, M.D., reports that Petitioner was let go or retired when his plant shut down).

The ALJ also properly considered that Petitioner did not complain to health care workers about severe pain from his heavy work from February 2005 to December 2005. *See* AR 16-17, 216, 219. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotations and citations omitted).

Likewise, inconsistent statements to healthcare providers about symptoms is relevant to a credibility determination because consistency is a strong indicator of credibility. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). As noted by the ALJ, Petitioner's November 2006 statement to his physician that

he suffered from low back and hip pain for ten years is inconsistent with his March 2003 statement that he has no chronic hip pain. AR 16, 313, 554. Petitioner also denied such pain in April 2003 and February 2006. AR 212, 313. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding ALJ's credibility determination that was based, in part, on the claimant's failure to report symptoms to his health care providers).

Finally, the medical records provide support for the ALJ's credibility and pain assessments. The ALJ explained that Petitioner's back, hip, and joint pain is controlled by medication. *See* AR 16, 543, 549. Impairments effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citation omitted). The ALJ also considered that a nerve conduction study yielded no evidence of radiculopathy despite Petitioner's testimony of daily continuous pain in the center of the back, right, down the right leg to the foot. AR 16, 42, 284. This consideration was relevant to the ALJ's determination of the severity of a claimant's pain and its effects. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). Additionally, Petitioner responded well to chiropractic treatment in 2002 and 2003, but did not return for further treatments in 2003 after being released with instructions to so do if symptoms returned. AR 16, 279. Significantly, a consultative physician, agency expert, and chiropractor found Petitioner able to lift 50 pounds, *see* AR 16, 249, but the ALJ credited Petitioner's testimony on this issue and found him more limited in his lifting than did the experts.

For all of these reasons, the Court finds that the ALJ provided reasons supported by substantial evidence to reject allegations of disabling symptoms by Petitioner. *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (setting forth standards for credibility determinations). Thus, to the extent Petitioner relies on his reports about his symptoms and

limitations to challenge the ALJ's determinations, the Court has viewed those reports through the ALJ's proper credibility determination.

This is not to say, however, that the Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of his position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without reasons for doing so. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted)). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

2.   <u>Petitioner's Limitations & the Listing Requirements</u>

If a claimant has an impairment or combination of impairments that meet or equal a listed impairment and meet the duration requirement, *see* 20 C.F.R. § 404.1509, the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii),(d). Petitioner has the burden to prove that he has an impairment or combination of impairments that meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683.

Petitioner argues that the Court should "reverse this case" because his impairments meet and equal the listing for disorders of the spine, 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04, and equal the listings for major dysfunction of a joint and hearing impairment, 20 C.F.R. pt. 404,

subpt. P, app.1, §§ 1.02, 2.08.  He also argues that the ALJ failed to consider the criteria of

subsection 1.04(C), and that his spine, hip and hearing loss impairments medically equal

Sections 1.04, 1.02 and 2.08, respectively.  Finally, he argues that the ALJ erred by determining

that his impairments are not "medically equivalent" to any listed impairment without a medical

expert's testimony on the subject.

> a.    *Petitioner's Spine Impairment - Section 1.04*

Petitioner argues that his impairments meet or equal the requirements of a spine disorder

under the regulations.  The listing at issue, Section 1.04, provides in relevant part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in compromise
> of a nerve root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or muscle
> weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test
> (sitting and supine);
>
> or
>
>  . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication,
> established by findings on appropriate medically acceptable
> imaging, manifested by chronic nonradicular pain and weakness,
> and resulting in inability to ambulate effectively, as defined in
> 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App 1 § 1.04 (A) and (C).  Petitioner acknowledges that the ALJ

considered whether Petitioner's spine impairment met Listing 1.04 with regard to subpart A, and

that the ALJ found Petitioner had failed the straight leg test bilaterally, *see* AR 14, but asserts

that the ALJ did not consider whether Petitioner might meet the listing of subpart C.  Pet.'s Br.,

pp. 10-11.

**MEMORANDUM DECISION AND ORDER - 12**

However, the ALJ found that "the claimant does not meet or equal the criteria of *any* 1.00 orthopedic listing." AR 14 (emphasis added). Additionally, as Petitioner notes, the ALJ found no evidence of weakness, which is one of the criterion for demonstrating a subpart C disorder. Pet's Br., p. 11. Although Petitioner argues that he does have weakness, as evidenced by his testimony about his difficulty walking more than 100 meters without resting and his general complaints of weakness, *see, e.g.*, AR 323, the ALJ did not find Petitioner's pain and limitation complaints entirely credible, *see discussion supra*.

Additionally, subpart C of the Listing requires that the Petitioner be unable to ambulate effectively. Section 1.00B2b (2) provides:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Petitioner testified at the hearing that he can walk "down to the end of the block" to get his mail and come back. AR 44. When the ALJ asked for clarification, Petitioner stated he could not walk around a high school track one time without needing to rest. He estimated he could walk basically about "a few hundred feet"[1] without needing to rest. *Id.*

Although Petitioner's counsel estimates that "there are not many city blocks or shopping trips that require walking less than 100 meters," he provides no evidentiary source for this

---

[1] Petitioner's counsel converted this estimate to meters, and refers in his brief to Petitioner's claimed walking limitation as a limit of 100 meters. Pet.'s Br., p. 11. The Court notes that this is about the length of a football field.

statement. The Court's own research indicates that a city block ranges from about 264 to 352 feet.[2] This issue arises because one example of ineffective ambulation is "the inability to walk a block at a reasonable pace on *rough or uneven surfaces*."[3] Section 1.00B2b (2) (emphasis added). However, it is not the Court's or the Petitioner's estimate the average city block length that matters. It is the reasonableness of the ALJ's findings and whether evidence in the record supports those findings that is considered on review. Petitioner has not demonstrated that the ALJ's consideration of the evidence or his finding that Petitioner did not meet the 1.04 Listing is not supported by substantial evidence.

Moreover, there is evidence in the record contradicting Petitioner's testimony about how far he can walk before needing rest. One Physical Residual Functional Capacity Assessment, completed by Kevin Hill, M.D., states that Petitioner can stand and/or walk for a total of about six hours in an eight-hour work day, AR 258, and the ALJ found Petitioner is capable of the exertional demands of light work, which may require a good deal of walking, *see* 20 C.F.R. § 404.1567(b).

Finally, as discussed above, the Court will not reverse the ALJ's decision based on Petitioner's argument that the ALJ incorrectly relied on medical records indicating that his pain is controlled with medication. Petitioner argues that the ALJ should have credited Petitioner's pain testimony instead. Pet.'s Br., p. 11. *See also* AR 16. However, the medical records support

---

[2] How big is a City Block?, http://www.land4ever.com/block.htm (Site last visited Sept. 20, 2010). *See also* YAHOO! ANSWERS, How big is an average city block?, http://answers.yahoo.com/question/index?qid=20070921141511AA9S3Zl, (describing New York's north-south blocks at 264 feet) (site last visited Sept. 21, 2010).

[3] Petitioner did not address in his brief the requirement of rough or uneven surfaces on the at-issue city block length.

**MEMORANDUM DECISION AND ORDER - 14**

the ALJ's finding that Petitioner's back and joint pain is controlled with medications and the Court finds no error in the ALJ's reliance on the following medical record note: "LBP[4] chronic. *Pain controlled with [medications]* but NSAID use causing gastritis. [Medication] recently started for GERD/gastritis, per [patient] doing much better." AR 543 (emphasis added). Another note in the medical records states: "Joint pain presumptive to OA. Using [medicine], *effective* but is bothering his stomach . . ." AR 549 (emphasis added).

In short, the ALJ did not error by crediting the medical record evidence over Petitioner's testimony. Moreover, it is "unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Here, the ALJ provided an adequate statement of the foundations on which his ultimate factual conclusions are based. That is sufficient.

### b. *Petitioner's Hip Problems - Listing 1.02*

Petitioner argues that his hip pain, resulting from osteoarthritis, is an impairment that medically equals the Listing 1.02. Pet.'s Br., pp. 13-14. Petitioner acknowledged that his hip problem cannot meet the listing because there is no "medically acceptable imaging of joint space narrowing," 20 C.F.R. Pt. 404, Subpt. P, App 1 § 1.02, but asserts that all the symptoms of the listing are present. As explained in the section addressing credibility, the ALJ provided sufficient support for his finding that Petitioner's hip and back pain is controlled by medication. Thus, the ALJ's determinations as to which symptoms and limitations may or may not meet or equal a listing are supported by substantial evidence.

---

[4] "LBP" appears to be an abbreviation for "lower back pain".

Petitioner acknowledges that a test "required to meet the [hearing loss] listing was never performed," but argues that his hearing loss is medically equivalent to Listing 2.08's requirements.[5]  Pet.'s Br., p. 9.  It is Petitioner's burden to demonstrate that he is disabled so the fact that evidence, such as a particular test, might help his case but is not in the record, does not help him demonstrate he is disabled under the Listing requirements.

The ALJ addressed Petitioner's hearing impairment, and found that "[n]one of the records indicate that claimant's problems are severe with the hearing aids."  AR 16.  In making this determination, the ALJ explained that Richard Davis, a hearing aid provider, "stated that even in a quiet environment the claimant cannot hear adequately to carry on a conversation," but found significant that "he did not indicate whether that was with or without hearing aids."  AR 16; *see also* AR 280.  Petitioner asserts that the ALJ's decision may have been different if he could have read a second report from Mr. Davis, submitted after the ALJ's decision, which stated that Petitioner's hearing loss is "so severe even with the use of his aids, that his comprehension of

---

[5]  The Listing at issue here is:

>  2.08 Hearing Loss Not Treated With Cochlear Implantation
>  A. An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c).
>  OR
>  B. A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e).
>
>  20 C.F.R. Pt. 404, Subpt. P, App. 1.

**MEMORANDUM DECISION AND ORDER - 16**

sounds is not clear," and that Petitioner, "being as hard of hearing as he is, would be severely limited in any kind of employment situation." AR 921.

Other evidence in the record besides Mr. Davis's initial report provides some support for the ALJ's determination that Petitioner's hearing loss is not severe when he uses hearing aids. First, Kevin Hill, M.D., a consultative physician, reported that Petitioner's hearing was "intact with hearing aids." AR 16; 249. However, Dr. Hill does not mention what types of objective testing he performed or how he established his opinion that Petitioner's hearing is intact with hearing aids. AR 247-49. The ALJ also considered a treating physician's report Petitioner had very good speech discrimination with the right ear, even though he had very poor speech discrimination with the left ear. AR 16, 497. This same treating physician, however, also stated that Petitioner had moderate to severe loss on the right and moderate to profound loss on the left. *Id.*

The ALJ further relied on Petitioner's performance at the hearing. Petitioner cites to the hearing transcript and argues that it reveals he had difficulty understanding the ALJ, but the Court was not at the hearing and will not second-guess the ALJ's assessment of Petitioner's performance at that hearing on the record before it.

However, as the ALJ relied on Mr. Davis's first report in his decision, even though Mr. Davis is not a physician, and considering the ALJ's view that "[n]one of the records indicate that the claimant's problems are severe with the hearing aids," AR 16, the Court finds the information provided in Mr. Davis's second report, which clarified his findings as to Petitioner's hearing, to be significant. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony regarding a claimant's symptoms is competent evidence that an ALJ must take into account,

**MEMORANDUM DECISION AND ORDER - 17**

unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").  This is particularly true where other evidence in the record indicates Petitioner's communication ability is impaired even with the use of hearing aids. *See,e.g*., AR 605 (Loren Randolph, an audiologist, assessed Petitioner and noted that he had "obvious communications difficulty in all settings" although it is unclear whether this is based on his reports or her observations).

Although the ALJ did not have the opportunity to consider Mr. Davis's second report, it was before the Appeals Counsel on review.[6]  This clarification of the evidence, which it was not clear was necessary until after the ALJ issued his decision, is new, material evidence that the Court finds good cause to consider.  *See Mayes v. Massanari*, 276 F.3d 453, 461 n. 3 (9th Cir. 2001) (explaining that the court had not decided whether good cause is required to review additional evidence submitted for first time to Appeals Council, or whether good cause is required only when such evidence is submitted for first time to district court).  In this regard, it is notable that the ALJ did not discuss whether Petitioner's hearing loss met or equaled a listing, despite his finding that the hearing loss is severe.  *See* AR 14.  Under these circumstances, where there is new and clarifying information, and the ALJ did not discuss whether Petitioner's hearing loss met or equaled a listing, this case will be remanded for reconsideration to allow the ALJ to make a finding about the severe hearing loss impairment, with all of the available information before him.

---

[6]  The Court may properly consider additional evidence presented to the Appeals Council after the ALJ's decision when determining whether there was substantial evidence to support the denial of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

**MEMORANDUM DECISION AND ORDER - 18**

d.     *Petitioner's Limitations Combined & His Alleged Mental Impairments*

Petitioner also argues that the ALJ failed to properly consider whether Petitioner's

conditions combined to meet the Listing requirements.  The regulations provide:

> In determining whether your physical or mental impairment or
> impairments are of a sufficient medical severity that such
> impairment or impairments could be the basis of eligibility under
> the law, we will consider the combined effect of all of your
> impairments without regard to whether any such impairment, if
> considered separately, would be of sufficient severity. If we do
> find a medically severe combination of impairments, the combined
> impact of the impairments will be considered throughout the
> disability determination process.

20 C.F.R. § 404.1523.[7]  The ALJ stated, without discussion, that the combination of impairments

do not meet or medically equal one of the listed impairments.  AR 14.  Considering the Court's

decision to remand for a new determination about Petitioner's hearing limitation, on remand the

ALJ should also consider and discuss the combination of Petitioner's impairments.

Petitioner also asserts that the ALJ should have considered his mental conditions, even

though the ALJ determined they were not severe, and argues that those conditions are severe.

Although state agency consulting psychologists opined that Petitioner does not have a severe

mental impairment, AR 265-78, Petitioner was diagnosed with PTSD and depression, and

---

[7]  Social Security Ruling 83-19 further explains:
> The mere accumulation of a number of impairments also will not
> establish medical equivalence. When an individual suffers from a
> combination of unrelated impairments, the medical findings of the
> combined impairments will be compared to the findings of the
> listed impairment most similar to the individual's most severe
> impairment. The functional consequences of the impairments (i.e.,
> RFC), irrespective of their nature or extent, cannot justify a
> determination of equivalence.

**MEMORANDUM DECISION AND ORDER - 19**

reported to his treating physician that he had suffered from depression for years but, between

November 2006 and April 2007, it had been worse.[8] AR 533. On remand, the ALJ should

discuss whether any of Petitioner's mental limitations impact his findings on whether any

impairments combined equal a listing and whether and how they impact his findings on

Petitioner's functional capacity to perform his former work.

      3.      <u>Medical Expert Testimony</u>

Petitioner's counsel argued that the ALJ erred by "not having present a medical expert to

testify as to whether [a listing] was equaled." The ALJ does not need to engage a medical expert

for an opinion, other than the State agency physician (who provided a report here), s*ee* SSR 96-

6p, 1996 WL 374180, **3-4, although the ALJ may find it appropriate to do so on remand. An

ALJ is required to obtain additional medical evidence only if existing evidence is insufficient to

determine disability. *See Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994); 20 C.F.R. §

404.1527(c)(3).

"[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence

so long as other evidence in the record provides a sufficient basis for the ALJ's decision."

---

    [8] Although this evidence undercuts the ALJ's determination that Petitioner's depression does not meet the 12-month duration requirement of 20 C.F.R. § 404.1509, AR 14, other evidence in the record supports the ALJ's finding that Petitioner does not have a severe mental health impairment. Significantly, Petitioner did not assert that mental impairments limit any particular work activity. Indeed, the only mental health symptom identified by Petitioner at the hearing is a lack of desire to go out around people, which he stated has improved with treatment. AR 56-57. Additionally, Petitioner did not state on his disability reports that a mental impairment limits his ability to work. AR 142-49, 172-90. As noted by the ALJ, the evidence shows significant mental health complaints only in March and April 2007, and no evidence of such complaints or treatment between February 2005 and July 2006. AR 14, 220, 277, 281-82, 618-34.

**MEMORANDUM DECISION AND ORDER - 20**

*Naber,* 22 F.3d at 189 (8th Cir. 1994); *see also Miles v. Barnhart,* 374 F.3d 694, 700 (8th Cir. 2004) ("some medical evidence must support the determination of the claimant's RFC"). Because there is adequate medical evidence in the record, the ALJ had no duty to obtain additional evidence here.

        4.        <u>Petitioner's Residual Functional Capacity</u>

Residual functional capacity is an assessment of that individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis - in other words, what an individual can still do despite his limitations. *See* SSR 96-8P. In assessing an applicant's residual functional capacity, the ALJ must consider all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" submitted by an individual's treating source or other acceptable medical sources. *See id.* Here, Petitioner takes issue with the ALJ's conclusion that Petitioner has the residual functional capacity to perform his past work.

However, the ALJ's limitations findings, and the resulting work capacity assessment, are supported by a consulting physician, who found Petitioner capable of medium-exertion work activities. AR 17, 258. The ALJ gave Petitioner's testimony more weight at this step of his analysis than he gave to three of the medical experts, and found Petitioner is limited to light work with some restrictions. AR 17. For the most part, the reasons stated by the ALJ are sufficient for his finding of greater limitations than certain medical experts assessed, and are sufficient for his determination that the Petitioner could perform past relevant work with some additional restrictions. However, to the extent the ALJ's reconsideration of Petitioner's hearing

limitation impacts the RFC assessed, the ALJ should reconsider Petitioner's ability to perform his former work.

The Court notes that it is not tasked with making a disability determination; rather, it must ensure that the ALJ's findings are supported by the record. In undergoing such a review here, the record supplies substantial evidence of the legitimate reasons supporting the ALJ's decision as to the Petitioner's RFC. While the ALJ's decision is potentially at odds with another's interpretation of the same record, it is nonetheless supported by specific and legitimate reasons, consistent with evidence in the record. As a result, the ALJ's decision will not be disturbed here.


## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. Here, however, the ALJ did not consider whether Petitioner's hearing loss equaled the relevant listing. Considering the conflicting and the new evidence, remand is appropriate for reconsideration of this issue. The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

In making this decision, the Court is mindful "that the Social Security Act is remedial and should be construed liberally and not so as to withhold benefits in marginal cases." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987) (citation and internal quotation marks omitted). This is not to say that this Court conclusively finds Petitioner to be either disabled or not disabled. The action is therefore remanded to allow the ALJ to consider whether Petitioner's hearing loss and his combined impairments meet or equal a listing and, on that basis, make the ultimate disability determination.

## VI. ORDER

Based on the foregoing, Petitioner's request for review is GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **September 30, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**